

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-14-2005

# Andrushkevich v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3541

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Andrushkevich v. Atty Gen USA" (2005). *2005 Decisions.* Paper 550.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/550

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 04-3541

———


ALENA VLADIMIROVNA ANDRUSHKEVICH,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,[*]
BOARD OF IMMIGRATION APPEALS of the Executive
Office for Immigration Review of the U.S. Department of Justice,
Respondents

[*] (Caption amended pursuant to Rule 43(c), Fed. R. App. P.)

———

Petition for Review of the Order
of the Board of Immigration Appeals
(A78 110 203)

———

Submitted Under Third Circuit LAR 34.1(a)
September 12, 2005

Before: SLOVITER, BARRY and SMITH, Circuit Judges

(Filed September 14, 2005)

———


OPINION

SLOVITER, Circuit Judge.

Alena Andrushkevich, a native and citizen of the Republic of Belarus, petitions for review of the final decision of the Board of Immigration Appeals ("BIA") affirming the order of the Immigration Judge ("IJ") directing petitioner's removal and denying her claim for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). This court has jurisdiction pursuant to 8 U.S.C. § 1252(a). For the reasons stated below, we will deny the petition for review.

## I.

Because the parties are familiar with the factual and procedural background of this case, we refer only to those facts that are pertinent to our disposition. Andrushkevich arrived at the San Ysidro, California Port of Entry on December 6, 1999, bearing no valid entry document. When the immigration inspector asked her to state her country of citizenship, Andrushkevich responded that she was a United States citizen. That same day, she was interviewed by another immigration inspector who took a sworn statement from her with the aid of an interpreter. In the statement, Andrushkevich claimed that her relatives would kill her if she returned to Belarus because she "left a lot of debts" by borrowing money from relatives and friends to secure passage to the United States. Id. at 303. In response to a question, she also stated that Belarusian authorities were not after her. When asked if she meant to tell the inspector she was a United States citizen when she said, "U.S.," she answered, "Yes." Id. at 303. The statement also bears a Certificate

2

of Translation, signed by the translator, attesting that it was read back to Andrushkevich in Russian, a language she understands.

Two weeks after entry, Andrushkevich, who was then in prison, was interviewed by another immigration officer with her lawyer present. She was released from custody two weeks thereafter and left California for New Jersey. The INS[1] commenced removal proceedings by filing a Notice to Appear ("NTA"), charging Andrushkevich as removable under 8 U.S.C. § 1182(a)(6)(C)(ii) for misrepresenting herself as a United States citizen and under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for not possessing valid entry documents.

In January 2001, Andrushkevich consulted a lawyer in Philadelphia. When the IJ asked why she let almost a year elapse before seeking a lawyer, Andrushkevich responded that she "had to have time to get back to [her]self, regain [her] composure literally." App. at 155.

On July 17, 2001, Andrushkevich applied for asylum, withholding of removal and protection under the CAT, claiming persecution on account of political opinion. At a hearing before the IJ beginning on November 12, 2002, Andrushkevich testified that the immigration officer who interviewed her was rude, frightened her, and told her to sign the

---

[1] Effective March 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an independent agency within the Department of Justice, and its functions were transferred to the Bureau of Citizenship and Immigration Services within the Department of Homeland Security. The BIA remains within the Department of Justice. Homeland Security Act of 2002, 6 U.S.C. §§ 271, 291.

statement without reading it back to her. She also claimed that she left Belarus because authorities persecuted her based on her membership in Young Gromada, a branch of the Belarus People's Front, an opposition group.

Andrushkevich testified that as a member of Young Gromada, she attended some fifteen demonstrations, citing three in particular in support of her application. She claimed that at each of these three demonstrations spanning from July to October of 1999, she was arrested, interrogated, and beaten. She claims that there were 10,000 people at one of these demonstrations. She testified that despite the threats and abuse, she never yielded to her interrogators.

After the protest in October, she received two summons to report to an investigator. Allegedly fearing for her life and that of her parents, Andrushkevich fled the country.

In addition to these events, Andrushkevich claimed that "the president's people" visited her seven times during that summer and fall. Id. at 185. They questioned her parents about her activities, threatened to imprison her, send her to Chernobyl, or execute her parents if she did not support the State.

On cross examination, Andrushkevich was asked why her affidavit did not mention that her parents' lives were threatened or that she was threatened with forced labor at Chernobyl; her answer was vague and unresponsive. However, she did say that the affidavit contained her entire story, and that it was read back to her in her native

4

language.

When the IJ asked her if she claimed to be a United States citizen, Andrushkevich admitted answering "yes" when the officer asked her if she meant she was a United States citizen, but responded that she meant to say she was heading to the U.S., not that she was a citizen. Asked why she did not tell the inspector about being persecuted, she claimed it was because the officer frightened her.

The IJ also asked her why she did not file her asylum application within a year of her entry into the United States, and Andrushkevich told him that she had to undergo a "rehabilitation process." Id. at 224. She then stated that she did not have enough money to hire an attorney to file an application.

Andrushkevich also provided an expert, Dr. Zaprudnik, to testify in support of her application. He told the IJ about the harsh conditions in Belarus for people who oppose the government. Dr. Zaprudnik did not know Andrushkevich, but stated that he believed the government would keep a file on her based on what he read in her affidavit and that he feared she would be arrested if she were returned.

Following the hearing, the IJ denied all claims for relief and found Andrushkevich incredible and her application frivolous. On appeal, the BIA held that the IJ had erred in finding that Andrushkevich filed a frivolous asylum application, but agreed with the IJ's other determinations. The BIA issued a final order denying petitioner's claim for asylum, withholding of removal and protection under the CAT.

## II.

When the BIA conducts an independent analysis of the record, we review only the BIA decision. Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir. 2003). Factual determinations, such as an adverse finding of credibility or a determination that Andrushkevich misrepresented herself as a United States citizen, are reviewed under the substantial evidence standard. See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (standard of review for determinations of asylum eligibility); Ateka v. Ashcroft, 384 F.3d 954, 957 (8th Cir. 2004) (according substantial evidence review to IJ determination that Ateka made a false claim to U.S. citizenship). We can reverse only if a "reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). However, a court "reviews de novo the issue of whether [it has] jurisdiction to determine what constitutes extraordinary circumstances for a late filed asylum petition." Tarrawally v. Ashcroft, 338 F.3d 180, 184 (3d Cir. 2003).

## III.

The Immigration and Nationality Act ("INA") provides that "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit" under any federal or state law is inadmissible. 8 U.S.C. § 1182(a)(6)(C)(ii).

At her entry interview, Andrushkevich admitted that she claimed to be a United States citizen. At the hearing, she did not deny the statement, but then explained that she

6

actually meant she wanted to go to the United States, not that she was a citizen of the United States. We need not dwell on this ground for removability because, as the Government noted, Andrushkevich has conceded that she was removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I), entry without possession of valid entry document, an issue she did not challenge on appeal to the BIA or to this court.

**IV.**

We have generally counseled against putting too much weight on information obtained from an interview conducted upon entry. See, e.g., Senathirajah v. INS, 157 F.3d 210, 217-18 (3d Cir. 1998). However, if the discrepancies between such an interview and later testimony go to the heart of the claim, they can support an adverse credibility finding. Xie v. Ashcroft, 359 F.3d 239, 246 (3d Cir. 2004).

Here, the discrepancies go to the heart of the matter: whether or not Andrushkevich was persecuted by the Belarusian government. In her entry interview, Andrushkevich not only failed even to mention that she was seeking political asylum, she specifically said that the Belarusian authorities were not after her. At the hearing, she claimed that the Belarusian government was after her and that she was persecuted for her involvement in Young Gromada.

Furthermore, unlike previous cases where this court refused to consider entry interviews, Andrushkevich had the help of a translator, who signed a certificate saying he read the document back to her. The BIA rejected Andrushkevich's testimony that she

7

was so frightened of the immigration officer that she could not even mention that she was persecuted even though the officer specifically told her that she might not get another chance to tell her story.

Because the discrepancies between the entry interview and her subsequent testimony go to the heart of Andrushkevich's claim and the BIA's findings are supported by specific cogent reasons, we conclude that the BIA's adverse finding of credibility is supported by substantial evidence.

## V.

The BIA rejected petitioner's application for asylum because it was not filed within the required one-year period from arrival in this country. 8 U.S.C. § 1158(a)(2)(B). The one-year time limit to file asylum applications can be waived if the Attorney General determines that an applicant has demonstrated changed circumstances, or extraordinary circumstances relating to the delay in filing. 8 U.S.C. 1158(a)(2)(D). Significantly, Congress has expressly rejected judicial review of such determinations. See id. at § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)."). Thus, in Tarrawally, we joined the Eighth, Ninth, Tenth and Eleventh Circuits in holding that we lacked jurisdiction over determinations made by the Attorney General under § 1158(a)(2). The "language of 8 U.S.C. § 1158(a)(3) clearly deprives us of jurisdiction to review an IJ's determination that an asylum petition was not filed within the one year limitations period, and that such

8

period was not tolled by extraordinary circumstances." 338 F.3d at 185. Accordingly, we lack jurisdiction to review the BIA's denial of Andrushkevich's asylum application. However, her claims for withholding of removal and protection under the CAT are not subject to this jurisdictional bar, and we consider those claims next.

## VI.

Andrushkevich would be entitled to withholding of removal only if she demonstrated a clear probability of persecution if she were removed. Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003). Protection under the CAT requires an even greater showing of proof. Tarrawally, 338 F.3d at 187. In light of the Board's adverse credibility finding, Andrushkevich has failed to provide substantial evidence to support her claims. Country reports alone will not make up for incredible testimony. See Tarrawally, 338 F.3d at 188 (rejecting petition even though state department reports described torture practices because testimony was incredible, and Tarrawally did not offer evidence of his involvement with opposition groups). We thus conclude that the BIA properly denied withholding of removal and protection under the CAT.

## VII.

For the above reasons, we will deny Andrushkevich's petition for review.